IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| TERESA L. DUNFORD, ) | |
| ) | Civil Action No. 4:02CV00228 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | By:  Honorable Glen E. Conrad |
| ) | United States District Judge |
| Defendant. ) | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. § 1381 et seq. Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3), which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Teresa L. Dunford, was born on July 21, 1968. Ms. Dunford completed high school, where she was enrolled in special education classes. Plaintiff has no past relevant work. On October 20, 1998, Ms. Dunford filed application for supplemental security income benefits. Earlier applications for such benefits had proven unsuccessful. In filing her most recent claim, Ms. Dunford alleged that she became disabled for all forms of substantial gainful employment on October 19, 1998,

due to congenital anomalies of the cervical spine and hearing loss in her right ear. Plaintiff now maintains that she has remained disabled to the present time.

Ms. Dunford's claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. On February 20, 2002, the Law Judge issued a decision denying plaintiff's claim. The denial of benefits was affirmed by the Social Security Administration's Appeals Council. Upon further appeal to this court, the court remanded the case on the Commissioner's motion, based on the unavailability of the administrative hearing transcript. The case was remanded to the same Administrative Law Judge, who conducted a supplemental administrative hearing.

The Law Judge issued a second opinion on October 30, 2003. The Law Judge found that Ms. Dunford suffers from a variety of musculoskeletal problems, intellectual deficiency, and anxiety/depression. Because of this combination of impairments, the Law Judge ruled that plaintiff is limited to light levels of physical exertion. The Law Judge further found that plaintiff's capacity for light work is affected by her intellectual and emotional difficulties. Given plaintiff's residual functional capacity, and after considering Ms. Dunford's age, education, and lack of past work experience, as well as testimony from a vocational expert, the Law Judge determined that plaintiff is capable of performing several specific light work roles which exist in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that Ms. Dunford is not disabled, and that she is not entitled to supplemental security income benefits. See 20 C.F.R. § 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having again exhausted all available administrative remedies, Ms. Dunford has appealed to this court.

2

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. Ms. Dunford has an extensive medical history. As for her physical conditions, the record documents treatment for a congenital problem in her cervical spine which has resulted in degenerative arthritis; asthma; iron deficiency; obesity; and arthritis in her feet. However, despite multiple medical work-ups, the court finds that no physician has identified any physical impairment which could be expected to cause disability for lighter forms of work activity. Indeed, plaintiff's primary care physician, Dr. Gordon M. Green, has produced reports which indicate that Ms. Dunford is a "generally healthy lady." (TR 767). Upon review of the record, the court finds substantial evidence to support the Law Judge's determination that plaintiff retains sufficient physical capacity to perform lighter levels of work activity.

The more significant issue in this case concerns the severity of plaintiff's intellectual and emotional problems. Ms. Dunford experiences borderline intellectual functioning. She also has been diagnosed with various adjustment disorders, as well as situational anxiety and depression. In connection with her application for supplemental security income benefits, plaintiff has been referred to several mental health specialists.

3

Bede Pantaze submitted a psychological assessment on March 17, 1999. Mental status evaluation was essentially normal, other than for notation of deficiency in abstract thinking, limited impulse control, and "extremely poor" judgment. (TR 597-98). Based on her clinical interview and psychological testing results, Ms. Pantaze diagnosed psychological factors affecting medical condition; unspecified adjustment disorder; and borderline intellectual functioning. The psychologist estimated plaintiff's GAF as 70.[1] Ms. Pantaze's intellectual testing produced IQ scores in the mid to high seventies. (TR 600).

Another psychologist, Dr. Joseph Leizer, submitted a report on May 3, 1999. Dr. Leizer saw plaintiff at the behest of Ms. Dunford's mental health counselor. Based on his clinical evaluation, and his estimate of plaintiff's intellectual capacity, Dr. Leizer diagnosed mild mental retardation. However, he was unable to document any significant impairment in adaptive living areas. Dr. Leizer concluded as follows:

> DISABILITY STATEMENT
>
> Ms. Dunford would appear to have the intellectual and emotional capacity to understand, remember and follow simple instructions and directions, concentrate and persist at simple tasks, cope with unusual job routines and schedules, and relate to the general public, co-workers and supervisors within acceptable tolerances.
>
> CONCLUSIONS RELATED TO MENTAL HEALTH TREATMENT
>
> Because of no more than mild levels of anxiety and depression related to situational stress, Ms. Dunford would appear to need no more than occasional supportive counseling. However, given her conflicts with her parents, with whom she lives, her children's apparently untreated hyperactivity and her own pain-related health problems, as well as her lack of transportation and lack of a job, case management through mental retardation services would seem helpful.

(TR 626).

---

[1] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A score between 61 and 70 represents only some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, with some meaningful interpersonal relationships. American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000. P. 44-48.

4

Dr. Franklin Russel completed a psychological report on August 4, 1999. Dr. Russel saw Ms. Dunford on referral from the Virginia Department of Rehabilitative Services. Following his clinical interview, Dr. Russel diagnosed dysthymic disorder and borderline intellectual functioning. He assessed plaintiff's GAF as 60.[2] Dr. Russell offered the following conclusion:

> Ms. Dunford is a 31-year-old woman who apparently has a long history of intellectual delays; interpersonal problems; and more recently, physical complications. It is recommended that Ms. Dunford continue with her medical appointments to continue receiving treatment for her physical problems. It is also recommended that she continue her appointments with the mental health center in Martinsville, Virginia. Based on this assessment, Ms. Dunford is only marginally competent to handle her own funds. The examiner is uncertain whether Ms. Dunford is able to make appropriate arithmetic calculations in order to manage her money.

(TR 346).

Bede Pantaze submitted a second psychological study on September 26, 2000. Ms. Pantaze summarized her clinical observations as follows:

> Miss Dunford's performance on the tasks indicates she is right hand dominant. During the session, no speech problems, no obvious visual difficulty, when wearing glasses, and no obvious hearing difficulty were observed. She exhibited age-appropriate skill with gross motor movements and age-appropriate skill with fine motor movements. Activity level was generally task appropriate.
>
> Rapport with Miss Dunford was easily established. She was socially confident and comfortable in her interactions and talked to the examiner freely. Miss Dunford understood instructions readily. She exhibited an overall appropriate attitude toward the evaluation and maintained good interest and effort. Her approach to the assessment tasks was methodical and orderly. She was challenged by difficult items. Concentration was good, but she gave up too quickly. Praise appeared to stimulate performance. She recognized errors and reacted realistically. No unusual or bizarre behaviors were observed during the session. In general this is believed to be an accurate estimate of Miss Dunford's current level of intellectual functioning.

---

[2] An individual with a score between 51 and 60 demonstrates moderate symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, supra.

(TR 809-10). The psychologist also completed a medical assessment of plaintiff's mental ability for work-related activities. Ms. Pantaze described "good" ability in terms of all crucial work-related emotional components. (TR 811-12).

Dr. Samuel Fletcher, a clinical psychologist, submitted a report on April 10, 2002. Dr. Fletcher's testing revealed IQ scores in the 60s. His clinical observations indicated that Ms. Dunford is substantially impaired in terms of reasoning, comprehension, and judgment. Dr. Fletcher estimated GAF as 45.[3] The psychologist also completed a medical assessment of plaintiff's mental ability for work-related activities. Dr. Fletcher indicated that Ms. Dunford has no useful ability to execute detailed or complex job instructions. He also indicated that she is unable to function independently. The psychologist noted serious limitations in Ms. Dunford's ability to follow work rules, deal with the public, use judgment and deal with work stresses.

Dr. P. C. Patel, a psychiatrist, submitted a report and a series of office notes covering his treatment of Ms. Dunford in connection with services provided by the local mental health clinic. Dr. Patel first saw Ms. Dunford when she was hospitalized in June 2002 following onset of a severe major depressive episode with suicidal ideation and anxiety. Dr. Patel estimated GAF upon admission as 25.[4] Ms. Dunford was said to have made good progress upon administration of psychotrophic medication. She was discharged after seven days of hospitalization. Dr. Patel assessed her condition upon discharge

---

[3] A score of between 41 and 50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, supra.

[4] A score of between 21 and 30 indicates behavior that is considerably influenced by delusions/ hallucinations, serious impairment in communications or judgment, or an inability to function in almost all areas. American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, supra.

6

as improved, with a GAF around 70. Upon follow-up on July 16, 2002, the psychiatrist listed mental status findings as follows:

> Patient is a 34 year old well developed, well nourished white female who is alert, oriented, ambulatory; mood, affect is appropriate, consistent with dysthymia and anxiety; difficulty w/coping; low self esteem; guilt ridden; not suicidal/homicidal; of low average intelligence; judgment is intact; memory is intact; attention/concentration fair; self esteem is low; not delusional; not paranoid; no thought disorder noted; no command hallucinations noted.

(TR 1276-77). Dr. Patel diagnosed dysthymic disorder and personality disorder. On August 26, 2002, the psychiatrist indicated that Ms. Dunford was doing "fairly well." (TR 1275). In a report dated November 22, 2002, Dr. Patel related that plaintiff was doing fairly well, and that her primary problem was personality disorder with limited coping skills.

In short, disposition of this case turns on the weight to be accorded to the reports of the various mental health specialists. The Administrative Law Judge recognized the conflict in the evidence, and determined not to adopt the psychological findings of Dr. Fletcher. The court is constrained to conclude that the Law Judge's assessment in this regard is supported by substantial evidence. The Law Judge undertook to identify various discrepancies in the information reported by Ms. Dunford to Dr. Fletcher. Moreover, the Law Judge noted that other mental health specialists produced findings and GAF assessments which varied significantly from Dr. Fletcher's observations. The court also notes that Dr. Fletcher saw Ms. Dunford only a few weeks before her hospitalization for treatment of a major depressive episode. During this hospitalization, Dr. Patel prescribed medications which brought plaintiff's emotional symptoms under control. At the time Ms. Dunford was hospitalized, Dr. Patel, the psychiatrist, noted a GAF which was similar to that reported by Dr. Fletcher several weeks earlier. At the time of discharge, Dr. Patel estimated plaintiff's GAF at around 70. In short, it appears that Dr. Fletcher's observations were made during a period of time when plaintiff's emotional symptomatology

7

was especially pronounced, and that the other mental health specialists saw Ms. Dunford during those more normal periods when her symptoms were controlled through medication and counseling. The court believes that it was reasonable for the Law Judge to give less weight to the psychological findings of Dr. Fletcher, and more weight to the findings of the mental health specialists whose reports cover a longer period of time, and which can be expected to give greater insight into plaintiff's usual level of functioning.

In summary, the court concludes that there is substantial evidence to support the Law Judge's finding that plaintiff's nonexertional impairments are not so severe as to prevent all forms of work activity. The court believes that the Law Judge properly found, however, that plaintiff's intellectual and emotional deficiencies are so severe as to limit the range of light work activity for which she is otherwise physically capable. The court finds that the Law Judge propounded comprehensive questions to a qualified vocational expert so as to assess plaintiff's capacity to perform specific, light work roles which exist in significant number in the national economy. The court concludes that the Law Judge properly relied on the vocational expert's testimony in determining that Ms. Dunford possesses sufficient capacity to engage in several specific light work roles. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). It follows that the Commissioner's final decision denying plaintiff's entitlement to supplemental security income benefits must be affirmed.

In affirming the final decision of the Commissioner, the court does not suggest that Ms. Dunford is free of all pain and emotional dysfunction. Indeed, the court notes that the medical record clearly establishes that plaintiff experiences arthritic problems, which can be expected to produce pain and discomfort. On the other hand, it must again be noted that no doctor produced findings which indicate that Ms. Dunford's physical limitations are totally disabling in overall impact. It is also clear that

plaintiff suffers from definite intellectual and emotional problems. However, the reports from most of the examining psychologists, as well as those of the treating psychiatrist, indicate that plaintiff's nonexertional impairments are essentially stable, and are not such as to prevent all forms of work. It must be recognized that the inability to do work without any subjective discomfort does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). Once again, it appears to the court that the Administrative Law Judge gave detailed consideration to all the subjective factors reasonably supported by the medical record in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra. An appropriate judgment and order will be entered this day.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 27th day of July, 2006.

United States District Judge